# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BANK OF AMERICA, N.A.,

        Plaintiff,

  vs.

LAKE MEAD COURT HOMEOWNERS' ASSOCIATION, *et al.*,

        Defendants.

Case No.: 2:16-cv-00504-GMN-NJK

**ORDER**

Pending before the Court are the Motions for Summary Judgment, (ECF Nos. 83, 84), filed by Plaintiff Bank of America, N.A. ("Plaintiff") and Defendant SFR Investments Pool 1, LLC ("SFR"). Plaintiff and SFR filed Responses, (ECF Nos. 91, 93), as well as Replies, (ECF Nos. 94, 96), to their respective Motions.[1]

For the reasons that follow, Plaintiff's Motion for Summary Judgment is **GRANTED** and SFR's Motion for Summary Judgment is **DENIED**.

## I.    BACKGROUND

This case arises from the non-judicial foreclosure on real property located at 2092 Scanlon Ferry Court #103, Las Vegas, Nevada 89156 (the "Property"). (*See* Deed of Trust, Ex. A to Pl.'s Mot. Summ. J. ("Pl.'s MSJ"), ECF No. 83-1). On June 25, 2008, Carlos Nevarez ("Borrower") obtained a loan in the amount of $176,861.00 secured by a deed of trust (the

---

[1] Also before the Court is SFR's Motion to Strike, (ECF No. 104), requesting that the Court disregard Plaintiff's Reply in Support of its Notice of Supplemental Authority, (ECF No. 103).

Plaintiff's Notice of Supplemental Authority, (ECF No. 101), consists of an attached Nevada Supreme Court decision and a single-page summary of the same. In SFR's Response, it filed a 19-page brief addressing various arguments outside the scope of Plaintiff's supplement. (*See* SFR's Resp. to Notice of Suppl. Authority, ECF No. 102). The Court finds that considerations of fairness counsel in favor of allowing Plaintiff to address SFR's arguments. Accordingly, for good cause appearing, the Court will consider Plaintiff's Reply in Support of its Notice, (ECF No. 103), in addition to SFR's Response, (ECF No. 102), and deny SFR's Motion to Strike.

"DOT") recorded on June 27, 2008. (*Id.*). On May 17, 2011, upon Borrower's failure to pay all amounts due, Lake Mead Homeowners' Association ("HOA"), through its agent Alessi and Koenig, LLC ("A&K"), initiated foreclosure proceedings against the Property by recording a notice of delinquent assessment and a subsequent notice of default and election to sell. (*See* Notice of Delinquent Assessment Lien, Ex. D to Pl.'s MSJ, ECF No. 83-4); (Notice of Default, Ex. E to Pl.'s MSJ, ECF No. 83-5).

Plaintiff obtained its interest in the DOT through an assignment of deed of trust recorded on June 20, 2011. (*See* Assignment, Ex. C to Pl.'s MSJ, ECF No. 83-3). On October 14, 2011, in an attempt to preserve its interest in the Property, Plaintiff requested an accounting ledger from A&K specifying the amount of HOA's superpriority lien. (Request for Accounting, Ex. 2 to Miles Bauer Aff., Ex. G to Pl.'s MSJ, ECF No. 83-7). Because A&K responded with a ledger omitting the superpriority amount, (*see* Account History Report, Ex. 2 to Miles Bauer Aff., ECF No. 83-7), Plaintiff calculated what it determined to be the lien amount and sent A&K a check for $1,098.00. (*See* Tender Letter, Ex. 3 to Miles Bauer Aff., ECF No. 83-7); (A&K's Confirmation of Receipt, Ex. 4 to Miles Bauer Aff., ECF No. 83-8).

On November 5, 2012, HOA, through A&K, continued with the foreclosure proceedings by recording a notice of trustee's sale. (*See* Notice of Trustee's Sale, Ex. F to Pl.'s MSJ, ECF No. 83-6). HOA foreclosed on the Property on December 5, 2012, and a trustee's deed upon sale was recorded in favor of SFR on December 10, 2012. (*See* Trustee's Deed Upon Sale, Ex. H to Pl.'s MSJ, 83-8).

On March 8, 2016, Plaintiff filed the instant action asserting causes of action against various parties associated with the foreclosure on the Property: (1) quiet title with a requested remedy of declaratory relief against all Defendants; (2) breach of NRS 116.1113 against HOA and A&K; (3) wrongful foreclosure against HOA and A&K; and (4) injunctive relief against SFR. (*See* Compl. ¶¶ 30–83, ECF No. 1). On May 14, 2016, SFR filed counter and crossclaims

against Plaintiff and Borrower for: (1) quiet title; and (2) injunctive relief. (SFR's Answer 13:8–14:17, ECF No. 32). In the instant Motions, Plaintiff and SFR seek summary judgment on their respective claims for quiet title. (See Pl.'s MSJ, ECF No. 83); (SFR's Mot. Summ. J. ("SFR's MSJ"), ECF No. 84).

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an

essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. <u>DISCUSSION</u>

Plaintiff and SFR move for summary judgment on their competing quiet title claims. (*See* Pl.'s MSJ, ECF No. 83); (SFR's MSJ, ECF No. 84). Plaintiff argues that its first DOT

continues to encumber the Property because: (1) the statute governing the foreclosure sale is facially unconstitutional; (2) Plaintiff's tender of $1098.00 to A&K extinguished HOA's superpriority lien; and (3) the Property's grossly inadequate sale price and corresponding irregularities in the foreclosure process render the sale invalid. (*See* Pl.'s MSJ 5:24–9:26, 12:25–15:10, 17:2–21:19).

In turn, SFR asserts that Plaintiff's quiet title claim is barred by the applicable statute of limitations. (SFR's MSJ 7:22–11:19, ECF No. 84). Even if the claim is not time-barred, SFR continues, the HOA foreclosure sale was valid and consequently caused the extinction of Plaintiff's DOT. (*Id.* 22:8–25:17). SFR also argues that Plaintiff is not entitled to an equitable remedy given SFR's status as a bona fide purchaser for value. (SFR's Resp. to Pl.'s MSJ ("SFR's Resp.") 28:11–30:19, ECF No. 93).

**A. Statute of Limitations**

SFR argues that Plaintiff's quiet title claim is time-barred because Plaintiff failed to file its Complaint within the applicable three-year limitations period. (SFR's MSJ 9:22–11:19). According to SFR, Plaintiff's claim concerns HOA's failure to comply with NRS 116.3116 and Nevada law prescribes a three-year limitations period for actions arising from statutory liability. (*Id.* 9:22–10:17).

Contrary to SFR's assertions, an action to quiet title in Nevada is subject to a five-year limitations period. *Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank*, 388 P.3d 226, 232 (2017); *see also US Bank Nat'l Ass'n for Merrill Lynch Mortg. Inv'rs Tr.*, No. 2:16-cv00866-GMN-PAL, 2018 WL 4705525, at *2 (D. Nev. Sept. 29, 2018); *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1114 (9th Cir. 2016). For claims that arise from the non-judicial foreclosure on real property, the statute of limitations begins to accrue at the time of the foreclosure sale. *Gray Eagle Way*, 388 P.3d at 232; *US Bank Nat'l Ass'n for Merrill*

*Lynch Mortg. Inv'rs Tr.*, 2018 WL 4705525, at *2; *Bank of Am., N.A. v. Antelope Homeowners' Ass'n*, No. 2:16-cv-00449-JCM-PAL, 2017 WL 421652, at *3 (D. Nev. Jan. 30, 2017).

Here, the foreclosure sale took place on December 5, 2012, and SFR recorded its interest in the Property on December 10, 2012. (*See* Trustee's Deed Upon Sale, Ex. H to Pl.'s MSJ, ECF No. 83-8). Plaintiff filed its Complaint in this action on March 8, 2016. (*See* Compl., ECF No. 1). Because Plaintiff initiated this action within five years of the foreclosure sale, Plaintiff's cause of action for quiet title is timely.

Next the Court turns to the parties' arguments concerning the constitutionality of the foreclosure.

### B. Constitutionality of the Foreclosure

The parties dispute whether the Ninth Circuit's holding in *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017), compels the Court to find that Plaintiff's DOT survived the HOA foreclosure sale. (*See* Pl.'s MSJ 5:24–9:26); (SFR's MSJ 14:17–18:2).

In *Bourne Valley*, the Ninth Circuit held that NRS 116.3116's notice provisions violated lenders' due process rights because the scheme "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Bourne Valley*, 832 F.3d at 1159. The Ninth Circuit, interpreting Nevada law, declined to embrace the petitioner's argument that NRS 107.090, read into NRS 116.31168(1), mandates that HOAs provide notice to lenders even absent a request. *Id.* Accordingly, the absence of mandatory notice provisions rendered the statutory scheme facially unconstitutional. *Id.* at 1158–60.

*Bourne Valley*'s construction of Nevada law is "only binding in the absence of any subsequent indication from the [Nevada] courts that [the Ninth Circuit's] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). "[W]here the reasoning or theory of . . . prior circuit authority is clearly irreconcilable with the reasoning or

theory of intervening higher authority, [a court] should consider itself bound by the later controlling authority . . . ." *Miller v. Gammie*, 335 F.3d 889, 892–893 (9th Cir. 2003). "[A] [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation.").

In *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, the Nevada Supreme Court expressly declined to follow *Bourne Valley* and held that NRS 107.090 is incorporated into NRS 116.31168, thus requiring that HOAs "provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." 422 P.3d 1248, 1253 (Nev. 2018). As this Court previously explained, the Nevada Supreme Court's holding is clearly irreconcilable with the Ninth Circuit's finding of unconstitutionality because the Ninth Circuit premised its conclusion on NRS Chapter 116's lack of mandatory notice provisions. *See Bank of Am., N.A. v. Falcon Point Ass'n*, No. 2:16-cv-00814-GMN-CWH, 2018 WL 4682317, at *4 (D. Nev. Sept. 28, 2018). Because the Nevada Supreme Court has since interpreted NRS Chapter 116 as mandating notice, the rationale underlying the *Bourne Valley* decision no longer finds support under Nevada law. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (recognizing that cases are "clearly irreconcilable" where the "relevant court of last resort . . . undercut[s] the theory or reasoning underlying the prior circuit precedent."); *see e.g, Toghill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017).

In sum, *Bourne Valley*'s holding that NRS Chapter 116 is facially unconstitutional is clearly irreconcilable with the Nevada Supreme Court's subsequent pronouncement. Because the Nevada Supreme Court has final say on the meaning of Nevada statutes, *Bourne Valley* is no longer controlling authority with respect to NRS 116.3116's notice provisions and,

consequently, its finding of facial unconstitutionality. Accordingly, to the extent Plaintiff, in the instant Motion, seeks to quiet title based upon *Bourne Valley*, the Court rejects this theory.

**C. Tender of the Superprioriy Portion of HOA's Lien**

Plaintiff claims that its tender of the superpriority amount of HOA's lien to A&K invalidates the subsequent sale. (Pl.'s MSJ 12:25–15:10). SFR argues that the Court must disregard Plaintiff's evidence of tender because such evidence is inadmissible under the Federal Rules of Evidence and improper under the Federal Rules of Civil Procedure. (SFR's Resp. 4:22–5:23, 6:12–20). SFR contends the Court must exclude Plaintiff's exhibits and affidavit purporting to demonstrate evidence of tender (collectively the "Miles Bauer Affidavit") on the following grounds: (1) the exhibits are not properly authenticated; (2) the exhibits' affiant Adam Kendis ("Kendis") is without personal knowledge of the attached records; and (3) Plaintiff failed to identify Kendis as a witness in its initial disclosures. (*Id.* 4:20–6:20).

**i. Admissibility of the Miles Bauer Affidavit**

SFR argues that Kendis lacks the requisite personal knowledge to authenticate the contents of the Miles Bauer Affidavit. (SFR's Resp. 5:8–9). Plaintiff responds that Kendis satisfies the admissibility and authentication requirements because he need only declare his personal knowledge of the procedures for creating and maintaining the business records in question. (Pl.'s Reply 5:12–14, 5:17–20, ECF No. 94).

Under Federal Rule of Evidence 901(a), "[t]he foundational 'requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (quoting Fed. R. Evid. 901(a)). A party seeking admission of evidence need only establish a "prima facie showing of authenticity, as '[t]he rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" *Id.* (quoting *United*

*States v. Black*, 767 F.2d 1334, 1342 (9th Cir.1985)). Once this burden is met, questions concerning the accuracy or completeness of a given record affect its weight rather than its admissibility. *Id.*; *see also United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988).

"[A] proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002). Rule 902(11) provides that "a domestic record that meets the requirements of Rule 803(6)(A)–(C)" is deemed to be self-authenticating. Fed. R. Civ. P. 902(11). In turn, Rule 803(6) provides that business records are admissible when "two foundational facts are proved: (1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the record is kept in the course of regularly conducted business activity." *Sea-Land Serv., Inc. v. Lozen Int'l, LLC.*, 285 F.3d 808, 819 (9th Cir. 2002) (quoting *United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir. 1985)); *see also* Fed. R. Evid. 803(6).

Here, the Court is satisfied that Kendis has sufficiently authenticated the records attached to his affidavit. Kendis's affidavit states that he is an employee of Plaintiff's retained counsel, Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer"), and that he has personally cross-referenced the information in the affidavit and exhibits with Miles Bauer's records to confirm the accuracy of the documents. (*See* Miles Bauer Aff., Ex. G to Pl.'s MSJ, ECF No. 83-7). Kendis states he is familiar with Miles Bauers' record-keeping policies and that his job responsibilities require him to maintain records in connection with the tender payments to HOA in this case. (Miles Bauer Aff. ¶¶ 3–9, Ex. G. to Pl.'s MSJ, ECF No. 83-7). Additionally, each exhibit attached to the affidavit is identified in Kendis's sworn affidavit. This is sufficient for a reasonable juror to find that the evidence attached to the Miles Bauer Affidavit is what Kendis claims it to be.

The Court rejects SFR's contention that Kendis's lack of personal knowledge precludes admission of the Miles Bauer Affidavit. On the contrary, Rule 803(6) allows testimony from a "qualified witness," which has been "broadly interpreted to require only that the witness understand the record-keeping system." *Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 998 (N.D. Cal. 2015) (quoting *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990)). That is, to meet the Ninth Circuit's "low bar" for serving as a "qualified witness," a witness need only have knowledge of the record-keeping procedures; a witness need not establish how or when a particular record was maintained. *See id.* ("There is no requirement that she or Wells Fargo establish when and by whom the documents were prepared."); *Ray*, 930 F.2d at 1370 ("[A]lthough Webber was not the custodian of Ray's welfare records, she was a 'qualified witness' to establish that Rule 803(6)'s foundational requirements had been met."); *United States v. Basey*, 613 F.2d 198, 201 n.1 (9th Cir. 1979) ("It is unimportant under Fed. R. Evid. 803(6) that the custodian did not herself record the information or know who recorded the information."). Moreover, where the custodial entity has a "substantial interest in the accuracy of the records," it does not matter that the records originated from another source. *See MRT Const. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998); *United States v. Childs*, 5 F.3d 1328, 1334 n.3 (9th Cir. 1993) (distinguishing prior precedent and finding that "the auto dealers in this case did rely on [a freight bill prepared by a different company] at issue and had a substantial interest in their accuracy.")); *Derderian v. Sw. & Pac. Specialty Fin., Inc.*, 673 F. App'x 736, 738 n.1 (9th Cir. 2016) ("It does not matter whether the records Li reviewed may have been given to her company by a third party; they may be admitted as the business records of her company even if they were generated elsewhere."); *see also United States v. Machinski*, No. 11-CV-01118-LB, 2017 WL 2617904, at *6 (N.D. Cal. June 16, 2017), *aff'd*, No. 17-16266, 2018 WL 6649595 (9th Cir. Dec. 18, 2018).

SFR cites *In re Vee Vinhee*, 336 B.R. 437 (B.A.P 9th Cir. 2005), for the proposition that electronic records must be authenticated by an affiant who testifies to the accuracy of the documents, identifies the chain of custody, and explains the circumstances of the document's preservation. (SFR's Resp. 5:8–16). Preliminarily, as Plaintiff correctly notes, the Ninth Circuit Court of Appeals, as well as courts within the Circuit, have raised questions about the controlling precedential value of bankruptcy appellate decisions. *See In re Zimmer*, 313 F.3d 1220, 1225 n.3 (9th Cir. 2002) (stating "the binding nature of Bankruptcy Appellate Panel decisions" is "an open question in this circuit"); *In re Arnold*, 471 B.R. 578, 590 (Bankr. C.D. Cal. 2012) ("[T]he court adopts the analysis in *Crain* and will thus consider, but will not be bound by, the decision of the BAP in *Friedman*."); *In re Grant*, 423 B.R. 320, 321 (Bankr. S.D. Cal. 2010) ("The Court is persuaded that BAP decisions have not been determined to be binding.").

To the extent *In re Vee Vinhee* may serve as persuasive authority, the Court is unpersuaded. It appears that the authentication requirements for business records in that case cannot be reconciled with more recent authority confirming the relatively lax requirements for admitting evidence under FRE 803(6). *See, e.g.*, *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018) ("The business records exception only requires 'someone with knowledge' about the record-keeping, not necessarily an employee of the business or someone with knowledge of how the reports were made or maintained."); *In re Hudson*, 504 B.R. 569, 575 (B.A.P. 9th Cir. 2014) ("[S]ubsection (6) of FRE 803 does not require the business custodian to certify he or she has first-hand knowledge of the facts set forth in the records being authenticated."); *Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 998 (N.D. Cal. 2015); *Branch Banking & Tr. Co. v. Smoke Ranch Dev., LLC*, No. 2:12-cv-00453-APG-NJ, 2014 WL 4796939, at *9 (D. Nev. Sept. 26, 2014), *aff'd sub nom. Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751 (9th Cir. 2017). Under this standard, "it is immaterial that the business

record is maintained in a computer rather than in company books." *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009) (affirming district court's admission of payment history summaries maintained in electronic format and compiled in the regular course of business."). *Cf. Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 2:15-cv-02812-ODW-PLA, 2017 WL 5634993, at *3 (C.D. Cal. Oct. 6, 2017) (disallowing admission of computer-generated summaries prepared by an individual that was "not an employee at the relevant time period" and where the report was prepared "for purposes of litigation.").

In summary, SFR advocates for an admissibility standard that is not in accord with recent controlling authority. Kendis meets the standard of a "qualified witness" under Rule 803(6) and has sufficiently authenticated the exhibits attached to his affidavit.

### ii. Failure to Disclose a Witness

Next, SFR argues that Plaintiff's failure to identify Kendis as a witness in its initial disclosures justifies exclusion of the Miles Bauer Affidavit. (SFR's Resp. 5:24–6:2). According to SFR, Plaintiff's failure to disclose is without substantial justification and prejudices SFR due to its inability to conduct discovery on the issues Kendis raises. (*Id.* 6:12–20).

Federal Rule of Civil Procedure 26(a)(1) governs initial disclosures. *See* Fed. R. Civ. P. 26(a). Rule 26(a)(1)(A)(i) requires parties to disclose the name of "each individual . . . that the disclosing party may use to support its claims or defenses" at the outset of a civil suit. Similarly, Rule 26(a)(1)(A)(ii) requires parties to disclose "a copy . . . of all documents . . . that the disclosing party . . . may use to support its claims or defenses."

"Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,

259 F.3d 1101, 1106 (9th Cir. 2001)); Fed.R.Civ.P. 37(c)(1). Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure. *Yeti by Molly, Ltd.*, 259 F.3d at 1106 (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)). "The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." *Goodman*, 644 F.3d at 827; Fed. R. Civ. P. 37(c)(1).

To the extent Plaintiff ran afoul of Rule 26 by failing to disclose Kendis's name, the Court finds the omission is harmless. Notwithstanding Plaintiff's failure to identify Kendis by name, Plaintiff's initial disclosures put Defendants on notice that a corporate representative of Miles Bauer would testify to Plaintiff's alleged tender of the superpriority amount. (*See* Pl.'s Initial Disclosures 3:22–4:4, ECF No. 94-2). The disclosures also expressly name the Miles Bauer Affidavit as a document on which Plaintiff intends to rely. (*Id.* 5:9). Even before the parties exchanged initial disclosures, Plaintiff's Complaint alerted SFR of its theory of this case by repeatedly alleging that HOA, through A&K, rejected Plaintiff's tender. (*See* Compl. ¶¶ 27, 52, 55, 65). Finally, as Plaintiff points out, prior to this case being administratively stayed, (ECF No. 56),[2] Plaintiff attached the same Miles Bauer Affidavit along with Kendis's declaration to its initial summary-judgment motion. (*See* Ex. G to Pl.'s Mot. Summ. J., ECF No. 55-7). Over a year later, once the Court lifted the stay, (ECF No. 63), the parties submitted a new proposed scheduling order and underwent additional discovery. (*See, e.g.*, Scheduling Order, ECF No. 68).

In short, SFR knew Plaintiff's substantive legal theory at the outset of this case and has not been prejudiced by Plaintiff's evidence establishing the same. Moreover, because the Court's stay of this action resulted in SFR having access to the Miles Bauer Affidavit over a year before reentering discovery, SFR had ample opportunity to defendant against this

---

[2] On September 20, 2016, the Court stayed this action pending exhaustion of all appeals in *Bourne Valley*, (ECF No. 56). Following the U.S. Supreme Court's denial of the petition for certiorari of that case, the Court lifted the stay on November 3, 2017, (ECF No. 63).

evidence. Accordingly, given the case's unique procedural history, any prejudice SFR suffered by Plaintiff's failure to disclose has been nullified. The Court will thus deny SFR's Motion to Strike and consider the Miles Bauer Affidavit.

The Court now turns to whether there is any genuine issue of material fact as to whether Plaintiff tendered the HOA superpriority amount prior to the foreclosure.

### iii. Plaintiff's Tender of HOA's Superpriority Lien Amount

Plaintiff argues that its payment of nine months' worth of assessments constituted a valid and unconditional tender such that HOA's superpriority lien was extinguished. (Pl.'s MSJ 13:24–15:10). SFR responds that Plaintiff's tender was invalid because the letter accompanying payment contained impermissible conditions. (SFR's Resp. 6:21–7:8).

"[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (2018) (en banc). "[T]he superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117. In addition to a full tender of the super priority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Here, the evidence indicates that on December 15, 2011, Miles Bauer, on behalf of Plaintiff, sent A&K a letter accompanied by a check for $1,098.00. (*See* Tender Letter, Ex. 3 to Miles Bauer Aff., Ex. G to Pl.'s MSJ, ECF No. 83-7). Pursuant to A&K's ledger identifying Borrower's delinquent payments, Plaintiff calculated nine months of assessments at a rate of $122.00 a month, totaling $1,098.00. (*Id.*); (Borrower Account History Report, Ex. 2 to Miles Bauer Aff., ECF No. 83-7). A&K and HOA's 30(b)(6) designees confirmed the accuracy of the $122.00 monthly assessments, (*see* A&K Rule 30(b)(6) Dep. 16:5–22, ECF No. 103-1); (HOA 30(b)(6) Dep. 14:3–11, ECF No. 103-2), and the accounting ledger states that no

nuisance and abatement charges were incurred during the relevant nine-month time period. (*See* Borrower Account History Report, Ex. 2 to Miles Bauer Aff.); (*See also* HOA's 30(b)(6) Dep. 17:5–18) (stating that nuisance and abatement charges, if applicable, would appear on the accounting ledger as "abatement assessments."). Thus, Plaintiff's tender of the $1,098.00 check to A&K represented the amount of HOA's superpriority lien. (*See* Tender Letter, Ex. 3 to Miles Bauer Aff.); (A&K's Confirmation of Receipt, Ex. 4 to Miles Bauer Aff.).

SFR has not adduced competing evidence suggesting A&K did not receive Plaintiff's tender or that Plaintiff incorrectly calculated HOA's superpriority lien. Instead, SFR argues that the letter accompanying the $1,098.00 check invalidated the purported tender because it impermissibly imposed conditions on A&Ks acceptance.

Plaintiff's tender letter, in relevant part, provides:

> Our client has authorized us to make payment to you in the amount of $1,098.00 to satisfy its obligations to the HOA as a holder of the first deed of trust against the property. Thus, enclosed you will find a cashier's check made out to Alessi & Koenig, LLC in the sum of $1,098.00, which represents the maximum 9 months worth of delinquent assessments recoverable by an HOA.
>
> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Plaintiff's] financial obligations towards the HOA in regards to the [Property] have now been "paid in full."

SFR argues that because the letter incorporates conditional language, there is a disputed issue of material fact as to the tender's validity. (*See* SFR's Resp. 6:21–7:8, 18:19–20:11). SFR asserts that acceptance of the check was improperly contingent upon agreement with the facts as stated in the letter, including Plaintiff's legal interpretation that the check's amount represented payment in full. (*Id.* 6:21–27, 19:14–20:11). SFR further contends that the check's description impermissibly stated it was "To Cure HOA Deficiency." (*Id.* 6:28–7:3). Finally,

SFR argues that A&K's rejection of Plaintiff's payment was made in good faith given the fluidity of Nevada foreclosure law during the relevant time period. (*Id.* 20:21–23:11).

At the outset, the Court notes that one of the purportedly improper paragraphs in the letter, quoted *supra*, is identical to the language the Nevada Supreme Court deemed unconditional and otherwise valid.[3] Therefore, to the extent SFR assigns impropriety to language in that paragraph, the argument necessarily fails. Specifically, with respect to the provision that an endorsement would be construed as acceptance of the letter's facts, the Court incorporates the reasoning of the Nevada Supreme Court and finds that this language imparts a condition on which Plaintiff had a right to insist. *Bank of Am., NA.*, 427 P.3d at 117.

SFR argues this condition is "especially egregious" because Plaintiff "does not even acknowledge that an association has a superpriority portion of its lien for any amounts that constitute abatement charges." (*See* SRF's Resp. 19:16–19). According to SFR, because Plaintiff's letter omits any reference to abatement charges and expressly notes that the check applies solely to nine months of HOA assessments, acceptance of the tender would force HOA to waive a portion of its superpriority lien. (*Id.* 20:2–8).

Preliminarily, this Court, as well as other courts in this District have considered virtually identical language and nonetheless concluded that the tenders were valid and unconditional. *See, e.g.*, *Bank of Am., N.A. v. Falcon Point Ass'n*, No. 2:16-cv-00814-GMN-CWH, 2018 WL 4682317, at *5 (D. Nev. Sept. 28, 2018) (Tender Letter, Ex. 3 to Miles Bauer Aff., Ex. C to Pl.'s MSJ, ECF No. 110-3); *Bank of Am., N.A. v. Toscano River Townhomes Ass'n, Inc.*, No.

---

[3] The tender letter before the Nevada Supreme Court contained the following paragraph:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [property] have now been "paid in full."

*Bank of Am., NA.*, 427 P.3d at 118.

3:16-cv-00196-RCJ-VPC, 2017 WL 2259985, at *3 (D. Nev. May 23, 2017) (Tender Letter, Ex. 3 to Miles Bauer Aff., Ex. 6 to MSJ, ECF No. 30-6); *U.S. Bank, N.A. v. Emerald Ridge Landscape Maint. Ass'n*, No. 2:15-cv-00117-MMD-PAL, 2016 WL 7826665, at *3 (D. Nev. Sept. 30, 2016) (Tender Letter, Ex. 3 to Miles Bauer Aff., ECF No. 40-8). In this case, because it is undisputed that there were no maintenance and abatement charges during the relevant nine-month time period, acceptance of the letter's facts in this regard would not "force the [HOA] to waive a portion of its superpriority lien," as SFR argues. (SFR's Resp. 20:2–8). On this point, SFR suggest it is irrelevant whether abatement charges were assessed because these charges "can arise at any time during the delinquency process," and such charges are "are not temporally limited." (*Id.* 20:4 n.9). Contrary to SFR's assertion, however, an HOA's superpriority lien applies exclusively to the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges. *Prop. Plus Invs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 401 P.3d 728, 730 (Nev. 2017). Therefore, new charges would not factor into an HOA's superpriority lien absent a new notice of delinquent assessments.

SFR also argues that the tender was invalid because "the check specifically indicated in its description that it was 'To Cure HOA Deficiency.'" (SFR's Resp. 6:28). As discussed above, the evidence shows that Plaintiff tendered nine months' worth of assessments and no maintenance and abatement fees were due to satisfy HOA's lien. SFR fails to explain why this language would invalidate the tender when the accompanying letter specified the check applies solely to nine months of assessments. (*Id.* 20:1–2); (*see also* SFR's Reply 19:23–27, ECF No. 96).

Lastly, SFR argues that A&K's rejection of Plaintiff's tender was in good faith. (SFR's Resp. 20:21–23:11). SFR asserts that during the relevant time period, "whether a lender had to pay nine months assessments plus collection costs to protect its deed of trust was still open to interpretation." (*Id.* 22:7–9). Because the tender letter required HOA to admit nothing more

was due, SFR continues, the rejection was reasonable given the nebulous status of Nevada law. (*Id.* 22:20–23:11).

The Court finds these contentions unpersuasive. Responding to this same line of argument, the Nevada Supreme Court stated "a plain reading of NRS 116.3116 indicates that at the time of Bank of America's [2012] tender, tender of the superpriority amount by the first deed of trust holder was sufficient to satisfy that portion of the lien. Thus, the issue was not undecided." *Bank of Am.*, 427 P.3d 113, 118 (2018). In a prior opinion, the Nevada Supreme Court arrived at the same conclusion explaining "we are not persuaded that this was a justifiable basis [for rejection] in light of the explanations contained in the letters sent by [plaintiff's] agent setting forth [plaintiff's] legal position." *BAC Home Loans Servicing, LP v. Aspinwall Court Tr.*, No. 69885, 422 P.3d 709, 2018 WL 3544962, at *1 (Nev. July 20, 2018) (unpublished).

Based upon this authority, the Court finds that the purported unsettled nature of Nevada law during the relevant time period does not establish sufficient justification for rejection of Plaintiff's tender. This conclusion is bolstered by the fact that Plaintiff's tender letter, as well as the preceding letter requesting an accounting, provided explanation of Plaintiff's legal position, as well as citations to pertinent statutory authority. (*See* Accounting Request, Ex. 1 to Miles Bauer Aff., Ex. G to Pl.'s MSJ, ECF No. 83-7); (*see also* Tender Letter, Ex. 3 to Miles Bauer Aff.).

In summary, the Court rejects SFR's argument that the tender letter was impermissibly conditional or otherwise invalid. Accordingly, Plaintiff's tender of the correct amount of HOA's superpriority lien protected its position as holder of the first DOT.

**D. SFR's Status as a Bona Fide Purchaser**

Because Plaintiff satisfied the HOA superpriority lien, SFR cannot prevail even if the Court were to find it was a bona fide purchaser for value. "A foreclosure sale on a mortgage

lien after valid tender satisfies that lien is void, as the lien is no longer in default." *See Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 121 (2018) ("Because a trustee has no power to convey an interest in land securing a note or other obligation that is not in default, a purchaser at a foreclosure sale of that lien does not acquire title to that property interest."). Accordingly, in light of Plaintiff's unconditional tender, SFR's status as a bona fide purchaser is immaterial.

Based upon the foregoing, the Court concludes that Plaintiff's tender satisfied HOA's superpriority lien and thus invalidated the ensuing sale to the extent it extinguished Plaintiff's DOT. While the sale remains intact, Plaintiff's DOT continues to encumber the Property and SFR's interest is subject to this encumbrance. Accordingly, Plaintiff's Motion for Summary Judgment, as to its quiet title claim, is granted. SFR's Motion with respect to its quiet title claim is denied.

### E. Plaintiff's Remaining Claims for Breach of NRS 116.1113, Wrongful Foreclosure, and Injunctive Relief

In its prayer for relief, Plaintiff primarily seeks an "order declaring that SFR purchased the property subject to [Plaintiff's] senior deed of trust." (*See* Compl. 15:3–4). The other relief requested—with the exception of injunctive relief—is phrased in the alternative. (*See id.* 15:7–9). Therefore, because the Court grants summary judgment for Plaintiff on its quiet title claim, Plaintiff has received the relief it requested. Accordingly, the Court dismisses Plaintiff's second and third causes of action for breach of NRS 116.1113 and wrongful foreclosure, respectively.

With regard to Plaintiff's request for a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests, the Court's grant of summary judgment for Plaintiff moots this claim, and it is therefore dismissed.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 83), is **GRANTED** pursuant to the foregoing.

**IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 84), is **DENIED**.

**IT IS FURTHER ORDERED** that SFR's Motion to Strike, (ECF No. 104), is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report within twenty-one (21) days of this Order's issuance identifying any remaining non-moot claims and how the parties intend to proceed.

**DATED** this __15__ day of January, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge